## W. S. DICKEY C. M. CO. v. BULLOCK
### (No. 1008; Decided January 10, 1922; 202 Pac. 1104)

Statutory Construction—Liens for Labor or Material Used in Drainage District Construction—Drains.

1. The remedy provided by Comp. Stats. 1920, Sec. 4888-4889 for the recovery of claims against contractors for labor or material furnished in the construction of ditches, canals or reservoirs, being inconsistent with the policy of the Drainage District act, Comp. Stats. 1920, Sec. 997-1094, held not to apply to construction work performed for drainage districts.

Error to the District Court, Big Horn County; Hon. Percy W. Metz, Judge.

Action by Walter S. Dickey, et al., trustees, doing business as W. S. Dickey Clay Manufacturing Company against Wm. P. Bullock and Bench Canal Drainage District, for the recovery of the cost of labor and material furnished a contractor in the performance of drainage construction for defendants. From a ruling and decision sustaining a demurrer to the petition and judgment for defendant, plaintiff brings error.

*H. Glenn Kinsley,* for plaintiffs in error.

The court below erred in sustaining a demurrer to plaintiff's petition. Facts are alleged therein bringing the case within the operation of Section 3824-3825 Comp. Stats. 1910, now Secs. 4888-4889 Comp. Stats. 1920, relating to the recovery of the cost of labor or materials furnished in

the construction of ditches, canals or reservoirs. A drainage district is a body corporate. (Section 36, Chapter 95, Laws 1911.) It may therefore sue or be sued. The action is for materials actually used by the drainage system and there is no reason why they should not be paid for. A drainage district is liable in damage for breach of contract. (Rood v. District, 120 Fed. 207; Bradbury v. District, 236 Ill. 36, 86 N. E. 163.) The Illinois statute is similar to ours. While such districts are *quasi*-public in their nature, the courts hold that they must pay for benefits received and damages occasioned to the property of others, in the exercise of their lawful functions. (Ft. Worth Imp. Dis. v. Ft. Worth, 158 S. W. 164; People v. District, 155 Cal. 373, 103 Pac. 207.) The act on which the suit is based has been adjudged constitutional. (Bolln Co. v. Ir. Co., 121 Pac. 22.) Statutes may be valid in part and invalid as to other parts. (6 R. C. L. 128; Woods v. Carl, 75 Ark. 328.) The purpose of the act is to protect persons furnishing materials used in the construction of ditches, canals and reservoirs. The district should be held liable for the value of the tile used for the improvement of the lands drained.

*R. B. West,* for defendant in error.

The petition fails to show the capacity in which plaintiffs do business, thus constituting a defect of parties. The district was not a party to the contract.

The statute relied on by plaintiff is similar to the mechanic's lien law. (Bolln v. Co. 19 Wyo. 542.) The district is a public corporation. (People v. Sacramento. District, 103 Pac. 213.) The property of public corporations is not subject to a mechanic's lien in the absence of statute. (Charnock v. Colfax, 50 N. W. 286; Knapp v. Swaney, 23 N. W. 162.) The law relied on by plaintiff does not apply to drainage districts. It is confined to irrigation companies.

Kimball, Justice.

The question for consideration requires a construction of sections 4888 and 4889, Wyo. C. S. 1920, which, with the

preceding section (§4887), were enacted in 1909, and appear as Chapter 78, Session Laws of 1909.

Certain of the provisions of section 4887 were held, in George Bolln Co. v. Irrigation Co., 19 Wyo. 542, 121 Pac. 22, 39 L. R. A. (N. S.) 868, to be unconstitutional. The case at bar presents no question requiring a consideration of that section, except that, as each of the three sections of the act was intended evidently to apply to the same class of "owners," we may note that such owners are referred to in the opening words of the first section (§4887) as "any ditch or canal company, or other owner or owners  *  *  * of a ditch, canal or reservoir."

Section 4888 provides that:

"Every  *  *  *  p e r s o n  *  *  *  furnishing any material  *  *  *  to any contractor  *  *  *  in the construction of any ditch, canal or reservoir,  *  *  * used by such contractor  *  *  *  in carrying on said work of construction, whose demand  *  *  *  for material  *  *  *  so furnished has not been paid, may deliver to the owner  *  *  *  of such ditch, canal or reservoir  *  *  *. a verified account of  *  *  *  the material  *  *  *  so furnished, and thereupon such owner  *  *  * shall retain out of the subsequent payments to the contractor  *  *  *  the amount of such unpaid account for the benefit of the person to whom the same is due."

Section 4889 provides that:

"Whenever any verified account mentioned in the preceding section shall be placed in the hands of any such owner  *  *  *  it shall be the duty of such owner  *  *  * to furnish the contractor with a copy of such verified account,  *  *  *  and if the contractor  *  *  *  shall not, within ten days,  *  *  *  give  *  *  *  notice that the claim is disputed, he shall be considered as assenting to its payment, and the owner  *  *  *  shall be justified in paying the same when due and charging the same to the contractor. The person or persons to whom any of the debt is due and who shall deliver a verified account thereof as above provided, may recover the amount thereof

in an action at law, to the extent of any balance due by such owner   *   *   *   to. the contractor at or after the time of delivering the verified account.   *   *   *."

The plaintiffs in error were the plaintiffs below, and the defendants were the Bench Canal Drainage District and William P. Bullock. A separate demurrer of the drainage district to the petition was sustained, and the plaintiffs electing to stand upon the petition, judgment was rendered dismissing the action as to that defendant. The case is here on error for review of that judgment.

The point upon which the case turns may be understood without setting forth at length the allegations of the petition. It appears from that pleading that Bullock was the contractor who had agreed to construct a drainage system for the defendant drainage district; plaintiffs had furnished to said contractor materials for use in the work; the account for said materials being due and unpaid, plaintiffs delivered to the dranage district a verified statement thereof, demanding its payment; the account was not disputed by the contractor; thereafter, the drainage district paid to the contractor upon the contract sums of money greater than the amount due the plaintiffs from the contractor, and the account for said materials remains unpaid. It is not alleged that there is anything due now from the drainage district to the contractor, nor that the latter is insolvent.

It is not contended that sections 4888 and 4889, supra, are invalid, but it is claimed that the class of owners affected thereby does not include drainage districts.

Such districts exist under and by virtue of the drainage district law which was approved March 1, 1911 (Ch. 95, S. L. 1911), and with amendments appears as sections. 997 to 1094, Wyo. C. S. 1920. They are declared to be bodies corporate (§1031), but for reasons too plain to require statement, are not private corporations or companies. The district courts appoint the commissioners of the districts (§ 1012), who are declared to be public officers (§1090), subject to the supervision of those courts (§1087), and to constitute the corporate authority of the districts (§1032).

The districts are created for the purpose of constructing beneficial works promotive of the public health or welfare (§ 1029). Their status as public or governmental agencies is universally recognized. (19 C. J. 615; 9 R. C. L. 644; note to Am. Cas. 1915 C. 13.) They have been variously designated as public, *quasi*-public and *quasi*-municipal corporations, while in other cases it is said that, in strictness, they are not corporations at all; but such exact classification is seldom of importance, and need not be undertaken in this case.

The owners affected by the act of 1909 (§§4887-4889, supra) are "any ditch or canal company" and "any other owner of a ditch, canal or reservoir," and it is argued that this language is such only as is customarily used to designate the owners of works used in storing or conveying waters for irrigation, and not such as would commonly be understood to include owners of drainage works, and, therefore, that the act should be construed to apply to owners of irrigation works only. This argument is not without force, but we would be going beyond the point necessary to be decided in this case if we should hold that the act could not in any case be invoked against an owner of a ditch, canal or reservoir used for purposes other than irrigation, or for drainage purposes only.

In 1909 there was no law authorizing the creation of drainage districts, and it may be said that the legislature could not then have had them in mind. Yet, if the language of the statute be sufficient to comprehend such districts, it would not follow, merely because they were not then contemplated by the legislature, that they should not, when created, come within its operation. 2 Lewis' Sutherland, Statutory Construction, (§ 516; Daniels v. State, 150 Ind. 348, 50 N. E. 74,) and cases cited.

Is the language of the statute, describing the owners to be affected by it, sufficient to comprehend such districts? Not being mentioned specifically, can it be said that it was the legislative intention that the general words

of the act should include them? In resolving this question the public character of drainage districts, the purposes for which they are organized, and for which they are authorized to raise money and possess property are important considerations. Public corporations are excepted by implication from various statutes which apply to corporations generally. Thus, unless it be expressly so provided, mechanics' lien laws do not affect public property. (Peters v. Killebrew, 24 Wyo. 53, 154 Pac. 996.) The statute in question in the case at bar does not give a right to a lien upon public buildings or other structures, but is in the nature of a lien upon moneys, and, perhaps, more analogous to a garnishment. It has frequently been held that similar districts cannot be summoned as garnishees. (Board of Directors v. Bodkin, 108 Tenn. 700, 69 S. W. 270; The Goyer Co. v. Williamson, 107 Ark. 189, 154 S. W. 525; Sallee v. Bank of Coming, 134 Ark. 109, 203 S. W. 276; Drainage District v. Chapline (Ark.) 220 S. W. 807; McBain v. Rodgers, (Miss.) 29 So. 91.) An examination of these cases will disclose that the reasons there given for exempting drainage districts from garnishment are the same as those for exempting municipal corporations from such process. It is upon grounds of public policy that municipal corporations, unless expressly included, are excepted from the operation of mechanics' lien and garnishment statutes. (2 Jones on Liens, §1375; Waples on Attachment and Garnishment, § 430.) That is, it appearing that the enforcement against municipal corporations of rights under those statutes would, in a measure, infringe upon the rights of the public, it will not be presumed, in the absence of express provisions, that the legislature intended that such corporations should be affected. The reasonableness of a universal application of this rule in garnishment cases may be questioned on good authority (Waples, supra; 1 Dillion, Municipal Corp. § 249), maintaining that the inconvenience resulting from a garnishment of public corpora-

tions is less important than the enforcement against them of rights under the statute. Of course, we do not now decide any question as to the operation of general garnishment statutes, but most of the cases under both these and mechanics' lien statutes are instructive by analogy, and support the foregoing rule of construction which we think is applicable in this case. And that rule must govern here for another reason which does not appear in those cases, involving only such corporations as are commonly called municipal, for to grant the plaintiffs the judgment which they ask against the drainage district would be inconsistent with the policy of the act under which the latter exists.

We have already referred to the public character of drainage districts, and cited the statutes authorizing their creation and operation. To illustrate further for the purposes of this case the policy of the drainage district act we need only to state generally that the districts organized thereunder exist for the sole purpose of constructing, repairing and maintaining drainage works; they may raise money only by assessments levied upon benefited lands, and those assessments cannot exceed the cost of construction, repair and maintenance, with incidental expenses. A large minority of the owners of lands comprising a district may have been brought into it involuntarily, and may be subjected against their will to the payment of their share of the cost of construction, etc. To fasten upon such a district a liability in excess of the funds which it may lawfully raise, where there is no primary liability, would be obviously contrary to the policy of the drainage district law. Whether the legislature may enact a law whereunder such a liability may be created by some act or omission of the district commissioners, we need not now decide. When they contemplate that result, they will no doubt make their purpose plain. The statute in question here (§§4888-4889,) if construed to apply to drainage districts, presents the possibility of such a result, and we

think it clear that the statute may not be so construed without giving to it an effect not intended by the legislature.

It follows that the demurrer was properly sustained, and the judgment of the district court should be, and is, affirmed.

*Affirmed.*

Potter, C. J., and Blume, J., concur.